UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C.

Case No.: 2:23-CV-00516-OEM-ARL

**AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiffs,

- Against -

UNITEDHEALTHCARE SERVICE, LLC,

Defendant(s).

Plaintiff(s), NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C. (Collectively herein "the Plaintiffs" or "The Provider(s)"), by and through their attorneys Lewin and Baglio, LLP, brings this complaint against UNITEDHEALTHCARE SERVICE, LLC, (herein after "UHC") and alleges as follows upon knowledge as to themselves and their own actions and otherwise upon information and belief:

# THE PARTIES

1. UHC is a is a Delaware Limited Liability Company insurance company licensed and authorized to do business in the State of New York. UnitedHealthcare Service LLC is fully owned by UnitedHealthcare Insurance Company ("UHI"), which is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

2. UHC is an insurer authorized to do business in New York State.

3. UHC violated New York law while doing business in New York State.

4. UHC does business within the EASTERN DISTRICT OF NEW YORK.

5. NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. (herein after "Rowe LLC") is a/an Limited Liability Company existing and operating under the laws of the State of , with its principal place of business, mailing address and registered agent in New York, NY 10075.  Its sole shareholder is Norman M. Rowe, M.D., whose domicile is New York County. Rowe LLC is a citizen of New York.

6. EAST COAST PLASTIC SURGERY, P.C. (herein after "ECPS") is a/an Professional Corporation existing and operating under the laws of the State of , with its principal place of business, mailing address and registered agent in Red Bank, NJ 00701. Its sole shareholder is Norman M. Rowe, M.D., whose domicile is New York County. ECPS is a citizen of New York.

## JURISDICTION AND VENUE

7. This matter was removed to this Court by Defendant based upon diversity of citizenship prior to joinder of issue. The Providers seek damages in excess of $75, 000.00.

## FACTUAL ALLEGATIONS

**A. Background**

8. Rowe LLC and ECPS are plastic surgery practices. Non-party Norman Rowe, M.D. and Non-Party Charles Pierce,  M.D. are employees of both Rowe LLC and ECPS. They were educated and trained at top surgical institutions. Rowe LLC

and ECPS provide expertise in microsurgery. Non-Party Norman Rowe, M.D. and Non-Party Charles Pierce, M.D. are trained in and implement the latest and most innovative techniques to reduce scarring and trauma from surgery. Rowe LLC and ECPS are widely regarded for their short-scar nipple saving breast reduction technique.

9. Non-Party Norman Rowe, M.D., Non-Party Charles Pierce, M.D., Rowe LLC and ECPS are not part of any "provider network" organized by UHC; UHC treats them as non-participating provider(s), commonly known as out-of-network provider(s).

10. Non-party SL needed bilateral breast reduction.

11. Non-party SL was a candidate for bilateral breast reduction.

12. At all relevant times, SL and UHC shared the costs of medically necessary medical treatment and services rendered by out-of-network provider(s) [1].

13. UHC uses what is known in the health care industry, as a prospective payment system, i.e., UHC determines the amount it will pay for a medical service prior to the service being rendered.

14. Under its prospective payment system UHC pays for medical services on a per service basis only after the medical service is rendered.

---

[1] See *Surprise Billing in Private Health Insurance: Overview of Federal Consumer Protections and payment for Out-of-Network Services* R46856 July 26, 2021, Rosso Shen & Isserman Congressional Research Digital Collection

15. Because there is no standing agreement between ECPS, Rowe LLC, and UHC, they entered into an ad-hoc agreement for the benefit of SL, wherein ECPS and Rowe LLC would render reduction mammaplasty to SL and UHC would calculate reimbursement to Rowe LLC and ECPS using 90th UCR, an industry standard.

B. **Rowe LLC, ECPS, And UHC Enter Into An Ad-Hoc Agreement To Render Services To SL**

  *1. UHC Offered A Unilateral Contract*

16. On or about August 9, 2021, a Rowe LLC and ECPS employee in New York City contact UHC using the phone number provided by UHC to obtain insurance payment information and spoke with a UHC employee.

17. UHC employee "Ryan" answered the phone number provided by UHC for the purpose of obtaining insurance payment information. UHC employee "Ryan" accessed UHC's records for SL.

18. UHC employee "Ryan" stated, among other things, whether CPT code 19318 was a covered service, it was; provided information that The Providers could use to calculate SL's out-of-pocket share of the costs ("cost share"); and UHC's reimbursement for out-of-network services.

19. Based upon that conversation and prior dealings with UHC, it was apparent to Rowe LLC and ECPS that UHC's employee Ryan had the authority to provide UHC's payment information.

20. During a phone conversation on August 9, 2021, between a Rowe LLC and ECPS's employee and UHC employee "Ryan" represented that UHC would

calculate the reimbursement for the services rendered to SL using 90th of UCR, and provided reference number 3868.

21. The 90th percentile of UCR is a phrase used in the health care industry to indicate the rate of reimbursement by references to industry accepted sources.

      a. *UHC Offered A Price Expressed In Terms Of Commercial Practice And Trade Usage, An Acceptable Means Of Identifying A Price In New York*[2]

22. The 90th of UCR refers to a method where UHC uses the 90th percentile threshold of the costs for a service rendered by similar providers in the same geographic area or marketplace to price a medical service.

23. New York Insurance Law §§ 3217-a(a)(19)(B) requires insurers to disclose the amounts paid for out-of-network services as a percentage of UCR. New York Insurance Law §3217-a(f) states that the 80th percentile of providers' charge for a service in a geographic area is the usual and customary cost for that service.

24. The 75th-80th percentile range of UCR is a percentile threshold recognized in the healthcare industry as a reasonable value for a medical service.

25. FAIRHealth data is a benchmarking database maintained by a nonprofit organization that is recognized by New York State Department of Financial Services and in the healthcare industry as a reliable source for provider pricing and for determining UCR.

---

[2] *Cobble Hill v. Henry & Warren*, 74 N.Y.2d 475 (1989)

26. Rowe LLC and ECPS use FAIRHealth data to determine the expected amount of payment and to calculate and collect from SL their cost share prior to any service being rendered to them.

   b. *Rowe LLC, ECPS and UHC had a meeting of the minds regarding bilateral breast reduction*

27. Rowe LLC and ECPS determined that SL was an appropriate candidate for bilateral breast reduction.

28. Prior to bilateral breast reduction being rendered to SL, UHC informed Rowe LLC and ECPS that it had determined bilateral reduction mammaplasty was medically necessary for SL.

## 2. *Rowe LLC And ECPS Accepted UHC'S Offer Of A Unilateral Contract By Performance*

29. On 1/26/22, Rowe LLC and ECPS accepted UHC's offer by rendering bilateral breast reduction to SL.

30. After rendering bilateral breast reduction to SL, Rowe LLC and ECPS submitted its billing to UHC.

   a. *Explanation Of Billing*

31. Rowe LLC and ECPS billed UHC a total of $300,000.00 for the services rendered on 1/26/22 indicating the services it rendered using industry standard billing codes, known as "CPT codes."

32. It is industry standard practice for UHC to rely upon the billing codes submitted by a medical provider to determine UHC reimbursement amount.

33. Rowe LLC billed UHC $150,000.00 for the services Norman Rowe, M.D. rendered. and ECPS billed UHC $150000.00 for the services Charles Pierce, M.D. rendered.

### 3. *UHC Breaches The Agreement By Failing To Pay The Offered Price*

34. UHC accepted Rowe LLC and ECPS's performance.

35. Upon receipt of the billing, UHC partially performed its obligation by adjudicating the claims, determining that Rowe LLC and ECPS had a right to payment and then issued payment in the amount of $76,000.84 to Rowe LLC for the services Norman Rowe, M.D. rendered and $203.28 to ECPS for the services Charles Pierce, M.D. rendered.

36. UHC partially performed its part of the agreement because it did not issue payment in an amount equal to 90th UCR.

37. UHC did not deny Rowe LLC and ECPS's claim.

38. UHC intentionally issued a payment that was less than what was offered and was late and unreasonable.

### C. UHC'S Automated Claims Processing Results In Underpaid Claims

39. Upon information and belief, UHC has, as is common in the health insurance industry, largely automated its claims adjudication process.

40. Upon information and belief, UHC has designed and implemented its automated claims adjudication process to ensure that claims for payment received by UHC for all services rendered by any out-of-network providers are intentionally underpaid.

41.  Upon information and belief, UHC intentionally underpays for out-of-network services to artificially reduce gross costs for medical services and increase its profits.

42.  Every dollar that UHC was obligated to pay that it didn't pay was a dollar counted directly as profits.

43.  While underpayment serves as a windfall for UHC, being misled into providing medical services leaves the medical provider with a broken promise and the legal bills associated with attempting to be made whole again.

44.  Upon information and belief, when UHC processes the claims it receives it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical provider's network status, i.e., participating provider or non-participating provider.

45.  Upon information and belief, CPT codes are among the most important pieces of information included in a claim to UHC, and a primary determinant of the amount UHC will ultimately pay.

46.  Upon information and belief, the type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what UHC will pay on the claim.

47.  Upon information and belief, UHC intentionally issues improper and reduced payment for services rendered by out-of-network providers.

48. The automated process means that UHC routinely applies limitations on reimbursement improperly. The improper application of limitations on reimbursement improperly reduces the amount of UHC's payment.

49. The delta between what UHC paid on the claim identified in the Complaint and what UHC should have paid is so substantial it forecloses the possibility that UHC merely made a mistake.

**D. UHC's Payment Was Unreasonable And Caused Rowe LLC And ECPS To Suffer Damages**

50. By paying $76,204.12 to Rowe LLC and ECPS UHC breached the contract.

51. $76,204.12 is not the amount agreed to and is not a reasonable value for bilateral breast reduction because it is not within the 75th-80th percentiles of UCR for bilateral breast reduction; as a result, Rowe LLC and ECPS suffered damages.

52. UHC did not use 90th UCR to calculate the payment for bilateral breast reduction and, therefore, UHC incorrectly calculated its payment to Rowe LLC and ECPS; as a result, Rowe LLC and ECPS suffered damages.

53. Alternatively, UHC intentionally incorrectly calculated 90th UCR resulting in an underpayment to Rowe LLC and ECPS; as a result, Rowe LLC and ECPS suffered damages.

54. UHC did not properly apply industry coding standards for determining limitations on reimbursement for the services rendered, therefore, UHC incorrectly calculated its payment to Rowe LLC and ECPS; as a result, Rowe LLC and ECPS suffered damages.

## COUNT I-BREACH OF CONTRACT

55. Rowe LLC and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

56. Rowe LLC and ECPS and UHC entered into a contract wherein Rowe LLC and ECPS would render medical services to SL and UHC would calculate and issue reimbursement for those services using 90th UCR.

57. Rowe LLC and ECPS provided all the medical services contracted for, but UHC has failed and refused to pay Rowe LLC and ECPS for those services as agreed between the parties.

58. As a result of UHC's actions Rowe LLC and ECPS have suffered damages in an amount to be determined by the trier of fact.

## COUNT TWO-UNJUST ENRICHMENT

59. Rowe LLC and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

60. UHC's failure to pay amounts due enriched them because every dollar that UHC did not pay that it was otherwise obligated to pay was a dollar in UHC's pockets as profits.

61. UHC's retention of the unpaid amount for the medical service provided is improper, and it is against equity and good conscience to allow UHC to keep the monies.

62. Rowe LLC and ECPS conferred a benefit upon UHC under circumstances where UHC knew or should have known that Rowe LLC and ECPS expected to be compensated for the benefit according to usual and customary prevailing rates for those services.

63. The benefit conferred upon UHC was the benefit of its bargain, bilateral breast reduction and other medical services rendered to SL.

64. UHC knew or should have known that Rowe LLC and ECPS expected to be reimbursed 90th UCR for the services rendered to SL because in the 18 months prior UHC had reimbursed Rowe LLC and ECPS for the same service rendered to other patients at a rate substantially greater than the reimbursement issued to Rowe LLC and ECPS.

65. As a result of UHC's actions Rowe LLC and ECPS suffered damages in an amount to be determined by the trier of fact.

## COUNT THREE- PROMISSORY ESTOPPEL

66. Rowe LLC and ECPS repeat and re-allege the foregoing paragraphs as if fully set forth herein.

67. UHC made a clear and definite promise to reimburse the medical services provided by Rowe LLC and ECPS to SL at 90th UCR and should have expected that NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C. would rely upon that promise.

68. UHC should have expected Rowe LLC and ECPS to rely upon its promise because, among other reasons, UHC knew or should have known that that Rowe LLC and ECPS were going to provide all the medically reasonable and necessary services to perform bilateral breast reduction.

69. UHC should have expected NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C. to rely upon its promise because, among other reasons, UHC knew or should have known that it had issued payment to Rowe LLC and ECPS under the same or similar circumstances for the same or similar services that were rendered to SL.

70. But for UHC's agreement to reimburse the service at 90th UCR, Rowe LLC and ECPS would not have otherwise provided the surgery and the related medical services to SL.

71. Relying on UHC's offer of reimbursement at 90th UCR, Rowe LLC and ECPS forbore collecting payment-in-full from SL prior to rendering reduction mammaplasty.

72. The Providers relied on UHC's promise to their detriment.

73. As a result of UHC's actions The Providers have suffered substantial damages in an amount to be determined by the finder of fact.

## COUNT FOUR- FRAUDULENT INDUCEMENT

74. Rowe LLC and ECPS repeat and re-allege the foregoing paragraphs as if fully set forth herein.

75. With the intent to induce Rowe LLC and ECPS to enter into an ad-hoc agreement to render medical services to SL, UHC intentionally misrepresented a present fact to Rowe LLC and ECPS: Specifically, UHC misrepresented that reimbursement would be calculated using 90th UCR.

76. When UHC intentionally told Rowe LLC and ECPS that it would calculate reimbursement using "90th UCR" UHC knew its claims processing system had no capacity to ensure the claims of Rowe LLC and ECPS would be paid using 90th UCR.

77. Rowe LLC and ECPS justifiably relied on UHC's statements that it would reimburse their services using 90th UCR, and as a result collected UHC out-of-pocket costs using 90th UCR and agreed to render rendered bilateral breast reduction to UHC.

78. But for UHC's statements that it would reimburse bilateral breast reduction at 90th UCR, Rowe LLC and ECPS would have collected greater out of pocket costs from SL and would not have agreed to render rendered bilateral breast reduction to UHC.

79. As a result of UHC's willful and wanton conduct Rowe LLC and ECPS have been damaged.

80. Based on UHC's willful and wanton conduct UHC should be punished to prevent UHC from continuing this fraudulent practice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C. & EAST COAST PLASTIC SURGERY, P.C. demand respectfully prays this Court:

1. Award Plaintiffs a judgment against Defendant in an amount to be determined at Trial to compensate Plaintiffs for all harm suffered, including but not limited to damages for violation of New York's Prompt Pay Law in the amount of $223, 795.88, or in the alternative consequential damages in an amount to be determined by the trier of fact, an award of punitive damages in an amount equal to treble the consequential damages, pre-judgment interest awarded together with statutory interest, costs and expenses as well as all other damages provided by applicable law.

2. Grant Plaintiffs such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury in this action of all issues to triable.

 

**LEWIN & BAGLIO, LLP**
By: Brendan J. Kearns.
Attorneys for the Plaintiff
1100 Shames Drive, Suite 100
Westbury, New York 11590
Tel: (516) 307- 1777
Fax: (516) 307- 1770

L&B File No.: 2298.COM.21(F)