UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
NORMAN MAURICE ROWE, M.D., M.H.A., L.L.C., *et al.*

                Plaintiffs,

        -against-

UNITEDHEALTHCARE SERVICE, LLC,

                Defendant.
-----------------------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-0516 (OEM) (ARL)

**ORELIA E. MERCHANT, United States District Judge:**

Plaintiffs Norman Maurice Rowe, M.D., M.H.A., L.L.C. ("Rowe LLC") and East Coast Plastic Surgery, P.C ("ECPS") (together, "Plaintiffs") bring this action alleging various state law contract claims against defendant United Healthcare Service, LLC ("Defendant" or "UHC"), including breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement. *See generally* Amended Complaint ("Am. Compl."), ECF 17.

Now before the Court is Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated below, Defendant's motion is **GRANTED.**

## BACKGROUND[1]

**A. The Parties**

UHC is an insurer authorized to do business in New York State. Am. Compl. ¶ 2. Rowe LLC and ECPS are plastic surgery practices that are "widely regarded" for a certain breast reduction technique. *Id.* ¶ 8. Non-Party Norman Rowe, M.D. ("Dr. Rowe"), Non-Party Charles Pierce, M.D. ("Dr. Pierce"), Rowe LLC, and ECPS are not part of any "provider network" organized by UHC; UHC treats them as non-participating provider(s), commonly known as out-

---

[1] The following facts are taken from the Amended Complaint and assumed true at the motion to dismiss stage. This Court has diversity jurisdiction over the claims at issue because Plaintiffs are citizens of New York and Defendant is a citizen of Delaware and Connecticut, and the amount at issue is over $75,000. *See* Am. Compl. ¶¶ 2, 5-7.

1

of-network provider(s). *Id.* ¶ 9. Put another way, "there is no standing agreement between ECPS, Rowe LLC, and UHC" regarding reimbursement rates. *Id.* ¶ 15.

Non-party "SL" was a patient who needed and was a candidate for a bilateral breast reduction. *Id.* ¶¶ 9-10, 27. UHC agreed that bilateral reduction mammaplasty was medically necessary for SL and confirmed as much to Rowe LLC and ECPS. *Id.* ¶ 28. At all relevant times, SL and UHC shared the costs of medically necessary medical treatment and services rendered by out-of-network provider(s). *Id.* ¶ 12.

UHC uses what is known in the health care industry as a prospective payment system, *i.e.*, UHC determines the amount it will pay for a medical service prior to the service being rendered. *Id.* ¶ 13. Under its prospective payment system, UHC pays for medical services on a per service basis only after the medical service is rendered. *Id.* ¶ 14.

Plaintiffs allege they entered an "ad hoc" oral contract with UHC via a telephone call with a UHC employee named Ryan ("UHC Employee") in which Ryan bound UHC to pay Plaintiffs a "90th percentile" of the usual and customary rate ("UCR") for SL's breast reduction surgery rather than the generally accepted 75th-80th percentile UCR. *See id.* ¶¶ 16-30. As alleged, "the 75th-80th percentile range of UCR is a percentile threshold recognized in the healthcare industry as a reasonable value for a medical service." *Id.* ¶ 24.

At some point prior to January 26, 2022, "UHC informed Rowe LLC and ECPS that it had determined bilateral reduction mammaplasty was medically necessary for SL." *Id.* ¶ 28.

January 26, 2022, Plaintiffs rendered the bilateral breast reduction to SL. *Id.* ¶ 29.

Plaintiffs subsequently billed UHC a total of $300,000.00 for the services rendered on January 26, 2022, and used CPT[2] codes in its billing.[3] *Id.* ¶ 31.

UHC adjudicated the claims, determining that Rowe LLC and ECPS had a right to payment and then issued payment in the amount of $76,000.84 to Rowe LLC for Dr. Rowe's rendered services and $203.28 to ECPS for Dr. Pierce's services rendered. *Id.* ¶ 35.

Plaintiffs then filed suit in state court on November 9, 2022, alleging that because "$76,204.12 is not the amount agreed to and is not a reasonable value for bilateral breast reduction because it is not within the 75th-80th percentiles of UCR for bilateral breast reduction; as a result, Rowe LLC and ECPS suffered damages," Defendants were liable for breach of contract claims. *Id.* ¶¶ 50-52; *see* ECF 1-1.

Thereafter, Defendant removed the case to this district on January 24, 2024. ECF 1. The Amended Complaint was filed on November 1, 2023, ECF 17, and Defendant's fully briefed motion to dismiss was submitted on February 8, 2024.[4] ECF 23.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to state a claim

---

[2] "CPT codes" are "industry standard" billing codes submitted by a medical provider to determine the reimbursement amount from an insurer. Am. Comp. ¶ 31. As alleged, "UHC processes the claims it receives it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical provider's network status, i.e., participating provider or non-participating provider." *Id.* ¶ 44.
[3] Rowe LLC billed UHC $150,000.00 for the services rendered by Dr. Rowe, and ECPS billed UHC $150000.00 for the services rendered by Dr. Pierce. *Id.* ¶ 33.
[4] The motion papers include Defendant's Memorandum of Law ("Def's Memo"), ECF 23-6; Plaintiffs' Opposition ("Pls' Opp."), ECF 23-27; Defendant's Reply Memorandum ("Reply"), ECF 23-29.

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Additionally, Plaintiffs' fraudulent inducement claim is subject to Federal Rule of Civil Procedure 9(b). *See Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.* ("*Aetna*"), 705 F. Supp. 3d 194, 205 (S.D.N.Y. 2023). Thus, the Amended Complaint must include allegations that "explain why the statement was fraudulent." *Id.* (cleaned up).

## DISCUSSION

### A. Evidence the Court may Consider on a Motion to Dismiss

Defendant maintains that the Court may properly consider both the transcript/recording of the August 9, 2021 call and the Summary Plan Description for the Welfare Benefit Plan for BlackRock, Inc. (the "Plan Summary"), which is the governing Plan document in effect on the dates of service at issue (*i.e.*, January 26, 2022). *See* Def's Memo at 6; Plan Summary, ECF 23-2. "The Summary Plan Description is kept and maintained by [UHC] in the normal and ordinary course of business." Declaration of Mabel S. Fairley in Support of Defendant's Motion to Dismiss ("Mabel Decl.") ¶ 4, ECF 23-1. Defendant argues that these documents should be deemed to "integral" the Amended Complaint or otherwise considerable at the motion to dismiss stage. documents. Def's Memo at 6

A complaint is deemed to contain a document if any one of three conditions is satisfied. First, the complaint may attach the document or incorporate it by reference. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Second, the complaint may

4

"rel[y] ... upon its terms and effect" to such an extent that the document is "integral" to the complaint. *Id.*; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Third, the document may be subject to judicial notice. *See* Fed. R. Evid. 201(b) (Judicial notice may be taken of facts that are either "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot be questioned.").

Most relevant to this motion's disposition, the Court concludes it may consider the Plan Summary at the motion to dismiss stage. Plaintiffs argue that the Plan documents should not be considered because their "claims are based on UHC's actions and words and not SL's Plan Terms." Pl's Opp. at 14. These arguments have already been rejected by other courts and affirmed by the Second Circuit on appeal. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, 22-CV-10312 (AKH), 2023 WL 2478642, at *2 (S.D.N.Y. Mar. 13, 2023), *reconsideration denied*, 22-CV-10312 (AKH), 2023 WL 4866045 (S.D.N.Y. July 31, 2023), and *aff'd*, 23-CV-1134-, 2024 WL 2813721 (2d Cir. June 3, 2024), and *aff'd,* 23-CV-1134-, 2024 WL 2813721 (2d Cir. June 3, 2024).

This case is nearly identical to the circumstances presented in *Park Ave*–the subject plan's terms and communications about its coverage pursuant to the Plan are at the "very heart" of Plaintiffs' claims. *See Park Ave. Podiatric Care*, 2023 WL 2478642, at *2. Here, the Amended Complaint presupposes the existence of a relationship between UHC and SL through a health insurance plan. Whether SL's plan was a healthcare plan regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, and whether an out-of-network provider like UHC was the recipient of any duty under the plan, are threshold questions that rely on the terms of the plan and are necessary to resolve in order to advance Rowe LLC's claims. *See Park Ave.*

5

*Podiatric Care, P.L.L.C. v. Cigna Health & Life Ins. Co.*, No. 23-1134-CV, 2024 WL 2813721, at *3 (2d Cir. June 3, 2024) (affirming the district court's consideration of insurance plan documents and finding of ERISA preemption). Further, the Amended Complaint "highlights that at the core of the disputed is the requirement that SL's ERISA plan administered by UHC provides some degree of out-of-network benefits." *Id.*; *see* Compl. ¶¶ 9, 20, 15, 18, 20-23. Because the plan's terms and effects were relied upon in Plaintiffs' Amended Complaint, and integral to its adjudication, the Court considers the Plan Summary as incorporated by reference. *See Park Ave. Podiatric Care*, 2024 WL 2813721, at *3.

Similarly, the Court may also consider the Provider Remittance Advice letter ("Remittance Letter"), ECF 23-3, that UHC sent to Plaintiff because it terms are explicitly referenced in the Amended Complaint by virtue of the fact Plaintiffs repeatedly reference the issuance of an underpayment by UHC. *See, e.g.*, Am. Compl. ¶ 35.

### B. ERISA Preemption

ERISA Section 514(a) provides that ERISA supersedes or preempts all state laws insofar as they "relate to any employee benefit plan." ERISA § 514(a), *codified at* 29 U.S.C. § 1144(a). The Supreme Court has explained that ERISA also preempts state common law claims that seek to rectify "alleged improper processing of a claim for benefits under" ERISA-regulated plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987); *see also Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 145 (1990) (finding a state common law claim preempted because it "purports to provide a remedy for the violation of a right expressly guaranteed by [ERISA]"). Crucially, state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan," *Ingersoll-Rand Co.*, 498 U.S. at 139 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)), or when "the existence of a [ ] plan is a critical factor in establishing liability," *id.* at 139–40.

Defendants argue that "S.L, was a participant in the Plan, which is an employee welfare benefit plan governed by ERISA, self-funded by the Plan Sponsor, BlackRock, Inc., and administered by UnitedHealthcare Service LLC pursuant to a full grant of discretionary authority in the governing Plan document." Def's Memo at 4 (citing Plan Summary).

By its terms, ERISA governs employee benefit plans established or maintained by an employer or an employee organization. *See Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 119 (S.D.N.Y. 2002) (citing 29 U.S.C. § 1002(1)-(6)); *see Rombach v. Nestle USA, Inc.,* 211 F.3d 190, 192–93 (2d Cir.2000) (reviewing the kinds of employee plans covered by ERISA). The Second Circuit has held that an ERISA plan is established if "from the surrounding circumstances a reasonable person can ascertain intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1209 (2d Cir. 2002).

The Plan Summary establishes on its face that it is indeed an ERISA plan. *See* Plan Summary at 3 ("You are eligible to enroll in the Plan if you are a regular part-time or full-time employee who is scheduled to work at least 20 hours per week. . . . You and BlackRock, Inc. share in the cost of the Plan. Your contribution amount depends on the Plan you select and the family members you choose to enroll. . ."); 156-59 (explaining "Your ERISA rights" and stating "The Plan is a self-funded welfare Plan and the administration is provided through one or more third party administrators."); 93-103 (section dedicated claims procedures for benefits); *see also* Def's Memo at 10 (further listing and citing to all portions of the plan establishing ERISA plan).

The Plan Summary further establishes that SL was a beneficiary of the ERISA plan: the "Policy Group" number appearing on the cover page of the Plan Summary is 710539. *Id.* at Cover Page. This matches the Policy Group number included on Remittance Advice letter from UHC

7

for the surgery.  *Compare* Plan Summary at Cover Page, *with* Remittance Advice at 4.  Therefore, the Plan Summary establishes that the Plan is an employee benefit plan governed by ERISA, and that SL was a beneficiary of this ERISA-regulated Plan.  *See Park Ave. Podiatric Care*, 2023 WL 2478642, at *2.  Considering the above, it is clear on the face of the Complaint that Plaintiff's claims derive from coverage determinations made pursuant to a health benefit plan regulated by ERISA.  *Id.*, at *3.  The adjudication of each of Plaintiff's claims would require the Court to analyze the terms of the Plan to determine the benefits owed.  *Id.*  As such, Plaintiff's claims would require "reference to" the Plan and are therefore expressly preempted by ERISA.  *Id.*; *see also Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (finding state law breach of contract and promissory estoppel claims preempted); *Jeffrey Farkas, M.D.*, 2019 WL 657006, at *4 (finding ERISA preempts a state law breach of contract claim where "[i]nterpreting the Agreement would require the Court to parse the language of the underlying [ERISA-covered] plan"); *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17-cv-3477, 2017 WL 6397737, at *5 (E.D.N.Y. Dec. 12, 2017) (finding contract, unjust enrichment, and Prompt Payment Law claims preempted).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.  To the extent Plaintiffs seek to assert claims for repayment under ERISA, Plaintiffs must demonstrate standing to assert any such claim.  *See* 29 U.S.C. § 1132(a)(1)(B); *McCulloch Orthopaedic Surgical Servs.,*

8

*PLLC v. Aetna Inc.*, 857 F.3d 141, 146–148 (2d Cir. 2017).  Plaintiff is granted leave to replead claims for repayment under ERISA by October 21, 2024.  Failing to replead timely will be basis for dismissal of the action in its entirety.

    **SO ORDERED.**

/s/Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated:        September 20, 2024
                Brooklyn, New York